[No. 21080.   Department Two.   July 9, 1928.]

## J. W. ALBRIGHT, *Appellant*, v. SUNSET MOTORS, INCORPORATED, *Respondent*.[1]

[1] CORPORATIONS (166)—REPRESENTATION—RATIFICATION AND ADOPTION—RETENTION OF BENEFITS.   Where an agreement was entered into and an assignment taken on behalf of a corporation, the retention of the assignment, after disapproval of the deal by the president and failure to notify the other party thereof, amounts to a ratification, binding on the corporation; and in such case, possession by the corporation's agent is possession by the corporation.

[2] RECEIVERS (63)—CLAIMS—PRESENTATION AND FILING.   As the time for filing claims against the receiver of an insolvent corporation may be extended, a claim filed two days late, at the instance of the receiver, will be upheld.

[3] CORPORATIONS (174)—CORPORATE LIABILITIES—CONTRACTS BEFORE INCORPORATION.   A new corporation taking over the assets of an insolvent company, ratifies a claim against the old corporation, by accepting and retaining it as a valid claim.

[4] RECEIVERS (63)—CLAIMS—PRESENTATION AND FILING.   Objection that a claim against a receiver was filed two days late cannot be made where it was filed at his request with knowledge of the facts out of which it arose.

Appeal from a judgment of the superior court for King county, Joiner, J., entered October 7, 1927, upon findings in favor of the defendant, in an action on contract, tried to the court.   Reversed.

*M. H. Van Nuys* and *Peters & Powell,* for appellant.

*R. W. Huntoon* and *Tucker, Hyland & Elvidge,* for respondent.

ASKREN, J.—In September, 1926, the appellant, being the owner of a Hupmobile automobile, made an agreement with the agent for that make of automobile in Seattle, the Sunset Motor Company, a corporation,

[1]Reported in 268 Pac. 1036.

whereby he was to purchase a new car, and the corporation was to accept his old car at a price of $950. He thereupon delivered to the corporation his old car, which it duly sold. Albright did not, however, take delivery of the new one due to the fact that he was going to be out of the state for a considerable period of time.

On December 3, 1926, the corporation became insolvent, and its general manager, one Habel, was appointed receiver by the court to wind up its affairs. In the process of liquidating the corporate affairs the receiver duly sold the assets, save certain exceptions not necessary here to notice, to one S. L. Savidge, who formed a new corporation, called the Sunset Motors, Inc., which is respondent here. To avoid confusion in the use of names which are so nearly identical, we shall hereafter refer to the defunct corporation as the old corporation and to the respondent as the new corporation.

The receiver, Habel, was continued with the new corporation as sales manager, and one Cocklin, not heretofore connected with the agency, was made its office manager and vice-president. The new corporation was desirous of retaining the friendship and business of the customers of the old corporation, and to this end an endeavor was made to take care of credits due from the old corporation to its customers. Accordingly Cocklin, at Habel's suggestion, endeavored to get in touch with Albright. Owing to Albright's absence, he saw one Van Nuys, his agent. The result of the conference was that Van Nuys, on behalf of Albright, executed a claim for $950 against the old corporation and assigned it to the new corporation. At the same time, Cocklin agreed that the new corporation would allow the full amount thereof on the

purchase price of a new Hupmobile, thus permitting Albright to make with the new corporation exactly the same deal he had arranged with the old one. The claim, duly assigned, was taken by Cocklin and nothing more was heard from either him or the new corporation until about two months later, when Albright requested delivery of the new car, which was refused. Tender was then made of the cash difference between the credit and the purchase price of a new car, and when this was refused, suit was brought to recover $950, the amount of the credit. About three months thereafter, appellant was notified that the claim he had assigned to the new corporation had been rejected by the receiver. After trial of the action, the court entered judgment for the respondent corporation, and this appeal followed.

The court based its judgment upon the theory that Cocklin had no authority to enter into the agreement whereby the assignment was taken in favor of the new corporation and an allowance of $950 made therefor on a new car, and since the deal when presented to Savidge was disapproved by him, it was not binding.

[1] There was a dispute in the testimony as to whether the deal was agreed on between Van Nuys and Cocklin, or was merely under consideration and required that it be submitted to Savidge, who was not only the president of the new corporation but the owner of all its stock save two qualifying shares. Respondent has urged very strenuously that the trial court should not have found that the agreement was actually made. We think it immaterial, so far as this case is concerned, whether the deal was closed with Cocklin or an agreement reached whereby the matter was to be submitted to Savidge, and he later refused to approve it. It is undisputed that the assign-

ment to the new corporation of the $950 claim was actually received by it and that, when disapproved by Savidge, the claim was still retained. It certainly is elementary law that one cannot privately disapprove an agreement and at the same time keep the consideration offered with it upon which it depends. It seems to be contended that there was no more obligation upon the corporation to return the assigned claim than there was upon Van Nuys, as agent, to request its return. But we think this mistakes the duties of the parties. As matters stood, it was the corporation's duty to act, since the agreement was being submitted to it for ratification. It had the power of rejection. If it disapproved, it must make that disapproval known.

Nor does the fact that, when Savidge told Cocklin that he would not approve the agreement he did not manually take into his possession the claim in question, but left it with Cocklin, presumably to be returned to Van Nuys, alter the liability of the corporation. Cocklin's possession of the claim was the corporation's possession, and it cannot relieve itself of liability by saying that it was Cocklin that failed to act.

[2] Some argument is made that the assigned claim was valueless, and therefore there was no consideration for the deal as made.

The argument is two-fold: First, it is said that the claim, at the time it was assigned, was already barred, because the time for filing claims in the receivership proceeding had expired two days before. But this leaves out of consideration the fact that the evidence showed that it was the receiver who sent Cocklin to get the claim and have it filed. Receivership proceedings are never bound by those hard and fast rules which govern statutory proceedings in the filing of

claims against estates. Courts have inherent power, for good cause shown, to extend the time for filing. 32 C. J. 885, §§ 181, 182. Here, appellant having been beyond the confines of the state and without actual notice of the receivership, would hardly have had difficulty in securing permission of the court to file his claim two days after the time named in the court order. This is especially true where the receiver himself was offering no opposition thereto.

[3] Perhaps the better answer to this point made is the fact that the new corporation, with full knowledge of all these facts, accepted the claim from Mr. Van Nuys and treated it as a valid claim. It was never rejected by it as being of no value or as an invalid claim; nor did it return the claim so appellant could take steps to have it approved.

[4] It is also contended that, since the record does not show conclusively that a subsequently appointed receiver later rejected the claim because it was filed too late, it is probable that its rejection came because of the fact that the claim was not a *bona fide* claim for other reasons. We think the short answer to this contention is that the first receiver, who was general manager of the old corporation and sales manager of the new one, was the active spirit in securing this claim to be filed. He sent Cocklin to get it. Knowing, as he must, the original transactions out of which this claim arose, he certainly could not allow this claim to lie dormant until a new receiver had been appointed, and then, when it might be too late to have it approved, urge that it was of no value.

With this view of the facts of the case, the law applicable can not be seriously questioned, and we need not attempt here to distinguish cases relied upon by counsel. Other points urged do not require extended discussion.

The judgment is reversed, with instructions to enter judgment in favor of the appellant.

Fullerton, C. J., Holcomb, Main, and Beals, JJ., concur.